(No. 23002.—

HENRY R. LEVY, Appellant, *vs.* THE BROADWAY-CARMEN BUILDING CORPORATION, Appellee.

*Opinion filed April 16, 1937.*

STONE and SHAW, JJ., specially concurring.
HERRICK, C. J., and ORR, J., dissenting.

ISAAC B. LIPSON, (A. C. LEWIS, of counsel,) for appellant.

KAMFNER, HALLIGAN & MARKS, (SAMUEL M. LANOFF, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Henry R. Levy, the appellant, was the principal stockholder in the Studebaker Sales Company of Chicago. In January, 1926, David Gordon purchased the land involved in this foreclosure, from that company. He paid $35,000, in cash, and secured the balance of $100,000 by a mortgage. He reduced the debt to $70,000, and on April 13, 1931, when this became due, an agreement was made between Gordon and Levy by which $5000 more was paid and the property was deeded to the Broadway-Carmen Building Corporation, organized by Gordon. That company gave its note for $65,000, guaranteed by Gordon and his wife, and secured by a trust deed on the premises. In addition, Levy received a commission of $1950. After $2500 had been paid on the principal debt, default was made by the mortgagor, and Levy obtained a judgment at law against David Gordon and Ida Gordon, his wife, for $66,691.87.

He also brought this suit to foreclose the trust deed. The superior court of Cook county rendered a decree on May 26, 1933, and found that $70,246.91 was due Levy on March 15, 1933. It ordered the mortgaged premises sold at public auction and directed the master in chancery to carry out the decree. Accordingly the master, on June 21, 1933, struck off the property to appellant, Levy, for $50,000. The appellee filed objections to the report of sale. It claimed that the property was reasonably worth $80,000, but that economic conditions had resulted in the destruction of the market for real estate in Chicago. It prayed that the court establish the value of the premises and credit that value on the amount found due Levy; that a deficiency judgment be denied and that the judgment previously rendered against Gordon and wife, be satisfied in full. It stated that it had offered, and was then willing, to deed the property to the appellant in cancellation of the debt. Levy answered, denying that the premises were worth more than $50,000. He set up the fact that the property was being managed by a receiver and that the rental was $150 per month, plus $5 for each automobile sold by the lessee; that the 1929, 1930 and 1931 taxes, totalling $6000, were unpaid. He offered to assign his certificate of purchase to anyone for the amount of his bid. The mortgaged premises are located at a street intersection and are known as No. 5100 Broadway. The lot is 97 by 100 feet and is improved with a one-story automobile display building and service garage. Both parties introduced affidavits as to value. Those on behalf of appellee, set the value at $77,400 to $80,000, which was based on a rental value of $400 per month, and a possible rental of $500 if the building were divided into storerooms. The affidavits on behalf of appellant showed that the improvements cost $35,902 thirteen years before, and that their replacement value was $22,500. They showed the reasonable rental value to be $250 per month and fixed the value of the premises at from $40,000 to $50,000. At

the close of the hearing on the objections, the chancellor ordered that the sale be approved, provided the appellant released and cancelled the outstanding judgment against the Gordons, and the mortgage indebtedness, but Levy refused to do this. A decree was entered on January 20, 1934, denying confirmation of the master's report of sale. It ordered a re-sale of the property at an upset price of $71,508.45, the amount then due, together with interest and costs of suit. The Appellate Court for the First District affirmed this decree on appeal. We granted leave and the cause is here on appeal.

Appellant contends that the order of January 20, 1934, denying confirmation of the master's report and directing a new sale at an upset price, was an amendment to the foreclosure decree dated May 26, 1933, and that the later decree was of no effect, because it was rendered at a succeeding term. This contention cannot be upheld. It was the duty of the court to supervise the sale and to approve or reject the report. If rejected, it was the duty of the court to order a re-sale and directions as to time, place and terms of sale were but incidents to such order. *Mariner* v. *Ingraham,* 230 Ill. 130; L. R. A. 1915A, 699.

As stated by appellant the remaining points for consideration are embodied in the question: May the chancellor, in a suit to foreclose a real estate mortgage, require the plaintiff to waive his right to a deficiency decree as a condition precedent to confirming the master's report of sale, or, in the alternative, may the chancellor fix a value and direct the master not to accept a bid lower than this reserved or upset price? Appellant says a court of equity is without power to disapprove a master's report of sale in a foreclosure suit, except there be mistake, fraud or some violation of duty by the purchaser or the master. He says that no matter how grossly inadequate the bid may be, it does not constitute fraud, or warrant the chancellor in disapproving the sale. No argument is required to dis-

close or sustain the wisdom of the rule that public policy and the interest of debtors require stability in judicial sales and that these sales should not be disturbed without cause. However, it is to be observed that the rule requiring more than mere inadequacy of price, and the showing of a breach of duty by the purchaser or the officer, or a fraud upon the debtor, arose out of cases where the judicial sales had been consummated and not out of mere offers to buy from a court. For example in *Skakel* v. *Cycle Trade Publishing Co.* 237 Ill. 482, the complainant brought his action to set aside a sheriff's sale and a deed already executed. The cases of *Mixer* v. *Sibley*, 53 Ill. 61, *Davis* v. *Pickett*, 72 id. 483, *O'Callaghan* v. *O'Callaghan*, 91 id. 228, and *Smith* v. *Huntoon*, 134 id. 24, all involved sales under executions at law. *Dobbins* v. *Wilson*, 107 Ill. 17, concerned a deed issued following a United States marshal's sale. *Quigley* v. *Breckenridge*, 180 Ill. 627, involved a sale made pursuant to a decree for partition, and although we held that the sale was fair and the master's report of sale should have been approved, nevertheless we re-affirmed the doctrine that a court of chancery possesses a large discretion in passing upon masters' reports of sale. In that case we pointed out the fact that such a sale is not completed until it is confirmed, and that until then, it confers no right in the land upon the purchaser. The sale in *Bondurant* v. *Bondurant*, 251 Ill. 324, was made by a trustee who had power to sell the land at public vendue and was not a judicial sale in the legal sense. In the case of *Allen* v. *Shepard*, 87 Ill. 314, we exercised our judicial power to determine whether or not the bid made at an administrator's sale was adequate, and determined that it was. In *Clegg* v. *Christensen*, 346 Ill. 314, we again exercised the same power. *Abbott* v. *Beebe*, 226 Ill. 417, concerned a partition sale. The land brought more than two-thirds of the appraised value. We again declared that there was power in the chancellor to set aside a judicial sale for inadequacy of price but we held

that the facts showed the sale under consideration was fairly made. The record did not disclose any inadequacy in the price.

In sales by conservators, guardians and trustees, involving consideration of objections filed before reports of sale were approved, inadequacy of price has always been considered in determining whether the sale was fairly made and whether the report should be approved and confirmed. In most of the cases the objector tendered a larger bid and very often the bid was required to be secured, but the fact that there was such an increased bid was, at most, evidence that the sale price was inadequate. In *Kloepping* v. *Stellmacher*, 21 N. J. Eq. 328, a sheriff sold property worth $2000 for $52. The owner was ignorant, stupid and perverse, and would not believe his property would be sold for so trifling an amount, although he had been forewarned. Redemption was allowed upon payment of the purchase price and costs. The court said: "But when such gross inadequacy is combined with fraud or mistake, or any other ground of relief in equity, it will incline the court strongly to afford relief. The sale in this case is a great oppression on the complainants. They are ignorant, stupid, perverse and poor. They lose by it all their property, and are ill fitted to acquire more. They are such as this court should incline to protect, notwithstanding perverseness."

In *Graffam* v. *Burgess*, 117 U. S. 180, 29 L. ed. 839, the Supreme Court of the United States, speaking through Mr. Justice Bradley, said: "It was formerly the rule in England, in chancery sales, that until confirmation of the master's report, the bidding would be opened upon a mere offer to advance the price 10 per centum. (2 Daniell, Ch. Pr. 1st ed. 924; 2d ed. by Perkins, 1465, 1467; Sugden, V. & P. 14th ed. 114.) But Lord Eldon expressed much dissatisfaction with this practice of opening biddings upon a mere offer of an advanced price, as tending to diminish confidence in such sales, to keep bidders from attending,

and to diminish the amount realized. (*White* v. *Wilson,* 14 Ves. 151; *Williams* v. *Attleborough,* Tur. & Rus. 76; *White* v. *Damon,* 7 Ves. 34.) Lord Eldon's views were finally adopted in England in the Sale of Land by Auction act, 1857, (30 and 31 Victoria, chap. 48, sec. 7,) so that now the highest bidder at a sale by auction of land, under an order of the court, provided he has bid a sum equal to or higher than the reserved price (if any), will be declared and allowed the purchaser, unless the court or judge, on the ground of fraud or improper conduct in the management of the sale, upon the application of any person interested in the land, either opens the bidding or orders the property to be resold. 1 Sugden, V. & P. 14th ed. by Perkins, 14 note (a).

"In this country Lord Eldon's views were adopted at an early day by the courts; and the rule has become almost universal that a sale will not be set aside for inadequacy of price unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness; being very much the rule that always prevailed in England as to setting aside sales after the master's report had been confirmed. [Citing many cases.]

"From the cases here cited we may draw the general conclusion that if the inadequacy of price is so gross as to shock the conscience, or if in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

In *Pewabic Mining Co.* v. *Mason,* 145 U. S. 349, 36 L. ed. 732, Mr. Justice Brewer said, at page 367: "In-

deed even before confirmation the sale would not be set aside for mere inadequacy, unless so great as to shock the conscience."

Stability must be given to judicial sales which have reached the point where title has vested in the purchaser, otherwise bidding would be discouraged. But where a bidder does not become vested with any interest in the land but has only made an offer to buy, subject to the approval of his offer by the court, and he bids with that condition, there can be no good reason why bidding would be discouraged by reason of the court's power to approve or disapprove the sale for gross inadequacy of bid. Sales by masters are not sales in a legal sense, until they are confirmed. Until then, they are sales only in a popular sense. The accepted bidder acquires no independent right to have his purchase completed, but remains only a preferred proposer until confirmation of the sale by the court, as agreed to by its ministerial agent. Confirmation is final consent, and the court, being in fact the vendor, may consent or not, in its discretion. (*Hart* v. *Burch,* 130 Ill. 426; *Jennings* v. *Dunphy,* 174 id. 86; *Pewabic Mining Co.* v. *Mason, supra; Smith* v. *Arnold,* 5 Mason, 414.) In the case last cited, Mr. Justice Story said, at page 420: "In sales directed by the court of chancery, the whole business is transacted by a public officer, under the guidance and superintendence of the court itself. Even after the sale is made, it is not final until a report is made to the court and it is approved and confirmed."

Many of the decisions, relied upon and cited by appellant, arose out of sales of lands under mortgages or trust deeds which contained a power of sale and were made at a time when there was no redemption, unless it was provided for in the mortgage or trust deed. Such sales were not subject to approval or disapproval by courts and the only remedy the mortgagor had against fraud or other misconduct was by a bill in equity to set aside the convey-

ance, or for redemption. In 1843 the legislature passed an act regulating the foreclosure of mortgages on real property which created a redemption period in favor of mortgagors, but the act did not purport to govern trust deeds containing a power of sale. Thereafter the foreclosing of mortgages was committed to courts of chancery, under their general equity powers, except as to certain prescribed matters of procedure. From that time mortgage foreclosure sales were made by an officer who was required to report the sale to the court. Purchasers did not become vested with any interest in the land sold until the report of sale was approved. The court fixed the terms and conditions of foreclosure sales and this practice still continues. In 1879 the legislature provided that no real estate should be sold by virtue of any power of sale contained in any mortgage, trust deed, or other conveyance in the nature of a mortgage, but that thereafter such real estate should be sold in the same manner provided for foreclosure of mortgages containing no power of sale, and then only in pursuance of a judgment or decree of a court of competent jurisdiction. (State Bar Stat. 1935, chap. 95, par. 24; 95 S. H. A. 23.) The history of this legislation is conclusive proof that it was the legislative intent that foreclosure sales should be made only upon such terms and conditions as were approved by the courts. *Garrett* v. *Moss,* 20 Ill. 549.

Unfairness from any cause which operates to the prejudice of an interested party, will abundantly justify a chancery court in refusing to approve a sale. We said in *Roberts* v. *Goodin,* 288 Ill. 561 : "The setting aside of the sale and ordering the property re-sold was a matter which rested largely within the discretion of the chancellor, whose duty it was to see that the lien be enforced with the least damage possible to the property rights of the mortgagor. Counsel cite numerous cases touching their contention that the chancellor erred in setting aside this sale. The cases cited, how-

ever, arose after the sale had once been confirmed, and not where, as here, the objection to the confirmation of the sale was filed immediately after the sale and before any confirmation had taken place. The chancellor has a broad discretion in the matter of approving or disapproving a master's sale made subject to the court's approval by the terms of the decree."

The legislature's purpose would be defeated if any other interpretation were given to the statutes on the subject of mortgage foreclosure. It is unusual for land to bring its full, fair market value at a forced sale. While courts can not guarantee that mortgaged property will bring its full value, they can prevent unwarranted sacrifice of a debtor's property. Mortgage creditors resort to courts of equity for relief and those courts prescribe equitable terms upon which they may receive that relief, and it is within their power to prevent creditors from taking undue and unconscionable advantage of debtors, under the guise of collecting a debt. A slight inadequacy is not sufficient reason to disapprove a master's sale, but where the amount bid is so grossly inadequate that it shocks the conscience of a court of equity, it is the chancellor's duty to disapprove the report of sale. *Connely* v. *Rue,* 148 Ill. 207; *Kiebel* v. *Leick,* 216 id. 474; *Wilson* v. *Ford,* 190 id. 614; *Ballentyne* v. *Smith,* 205 U. S. 285, 51 L. ed. 803.

The case of *Slack* v. *Cooper,* 219 Ill. 138, illustrates the rule. In that case the master sold the land, upon which the mortgage had been foreclosed, to the solicitor for the mortgagor for $3000. He acted under the mistaken impression that the buyer was the solicitor for the mortgagee, who appeared shortly thereafter and bid $7000. The master then announced publicly that since no cash had been deposited by the original bidder, and because of the misapprehension stated and his haste in making the sale, it would be re-opened for higher and better bids. At page 144 of that decision we said: "If the chancellor finds upon the

coming in of the report of a master, that the sale as made is not to the best interest of all concerned and is inequitable, or that any fraud or misconduct has been practiced upon the master or the court or any irregularities in the proceedings, it is his duty to set aside the sale as made and order another sale of the premises. The chancellor has a broad discretion in passing upon the acts of the master and approving or disapproving his acts in reference to sales and entering his own decrees, (*Quigley* v. *Breckenridge,* 180 Ill. 627,) and his decree will not be disturbed by this court unless it is shown that he has abused his discretion and entered such an order or decree as would not seem equitable between the parties interested."

We have limited our discussion to the power of a court of chancery to approve or disapprove a master's report of sale in a foreclosure suit and we hold that the court has broad discretionary powers over such sales. Where it appears that the bid offered the court for the premises is so grossly inadequate that its acceptance amounts to a fraud, the court has the power to reject the bid and order a re-sale.

There is little or no difference between the equitable jurisdiction and power in a chancery court to refuse approval to a report of sale on foreclosure, and the power to fix, in advance, a reserved or upset price, as a minimum at which the property may be sold. We have referred to the acts of 1843 and 1879 which require trust deeds and mortgages to be foreclosed in chancery courts and have pointed out that courts of equity, exercising their general equity powers in such cases, have the right to fix reasonable terms and conditions for the carrying out of the provisions of the foreclosure decree, and that such courts may order a new sale and set the old aside for the violation of some duty by the master, or for fraud or mistake. No reason appears why the chancellor cannot prevent a sale at a grossly inadequate price by fixing a reasonable sale price

in advance. The same judicial power is involved in either action. What is necessary to be done in the end, to prevent fraud and injustice, may be forestalled by proper judicial action in the beginning. Such a course is not against the policy of the law in this State and it is not the equivalent of an appraisal statute. It is common practice in both the State and Federal courts to fix an upset price in mortgage foreclosure suits. This is in harmony with the accepted principles governing judicial power in mortgage foreclosures.

In *First National Bank* v. *Bryn Mawr Beach Building Corp.* 365 Ill. 409, we pointed out the fact that such property as was there under consideration seldom sells at anything like its reproduction cost, or even its fair cash market value, at a judicial sale. We recognized the fact that the equity powers of State courts are no more limited than those of Federal courts, and that equity jurisdiction over mortgage foreclosures is general rather than limited or statutory. In part we said: "It would seem that since equity courts have always exercised jurisdiction to decree the enforcement of mortgage liens and to supervise foreclosure sales, such jurisdiction need not expire merely because the questions or conditions surrounding the exercise of such time-honored functions are new or complicated. If it may reasonably be seen that the exercise of the jurisdiction of a court of equity beyond the sale of the property will result in better protection to parties before it, it would seem not only to be germane to matters of undisputed jurisdiction, but to make for the highest exercise of the court's admitted functions." We there held that a court of equity has jurisdiction, in connection with an application for approval of a foreclosure sale, to approve a re-organization plan submitted by a bondholders' committee. The question is somewhat different from that presented in the case before us, but we there recognized the continuing vitality and growth of equity jurisprudence.

Cases wherein an upset price has been fixed are not confined to large properties for which, by reason of their great value, the market is limited or there is no market whatever. In *McClintic-Marshall Co.* v. *Scandinavian-American Building Co.* 296 Fed. 601, a building was constructed on two lots covered by the mortgage, and one lot belonging to the mortgagor that was not mortgaged. It was necessary, under the circumstances, to sell all the property, and to protect the mortgagor a reserved price was fixed. The fact of an upset price is referred to, although there was no objection to it being fixed, in *Northern Pacific Railway Co.* v. *Boyd,* 228 U. S. 482, 57 L. ed. 931, and *Pewabic Mining Co.* v. *Mason, supra,* and the power has been exercised in numerous other cases. 104 A. L. R. 375; 90 id. 1321; 88 id. 1481.

The appellant did not raise constitutional objections in the trial court and by appealing to the Appellate Court for the First District he would waive such questions. However, the fixing of an upset price does not violate section 10 of article 1 of the Federal constitution nor section 14 of article 2 of the Illinois constitution, which inhibit the impairment of the obligation of contracts. The reserved price dealt only with the remedy, and it was within the court's power to establish it as one of the terms and conditions of the sale. The appellant was not deprived of his right to enforce the contract, and his remedy was neither denied, nor so embarrassed, as to seriously impair the value of his contract or the right to enforce it. *Penniman's Case,* 103 U. S. 714, 26 L. ed. 502; *Town of Cheney's Grove* v. *Van Scoyoc,* 357 Ill. 52.

It is contended that the present holding conflicts with what we said in *Chicago Title and Trust Co.* v. *Robin,* 361 Ill. 261. It was not necessary to that decision to pass upon the power to fix an upset price, and what we said on that subject is not adhered to.

Each case must be based upon its own facts, and from this record we are of the opinion that no such gross inadequacy existed in the bid of $50,000, as would warrant the chancellor in refusing approval of the master's sale. Although the rents were pledged in the trust deed, they would amount to but little more than the taxes on the property of approximately $2000 per annum. Appellee's affidavits base the estimate of value largely on the rental value of the premises. They were rented for $150 per month, plus $5 for each automobile sold by the lessee, and this amounted to a total of $200 a month. Even if the premises brought $400, or the $500 per month which appellee's witnesses said could be had if the property was divided into storerooms, the cost of these changes is not given. This testimony did not warrant the chancellor in finding that these premises were worth $80,000. Although the property had been sold, before the panic, for $135,000, the value of real estate was greater then than at the time of the master's sale. The proof did not sustain a greater value than $50,000 at the time of the sale, but if it be assumed·that this was somewhat inadequate, the fact that there was a depressed market for real estate would not be a sufficient circumstance, coupled with the supposed inadequacy in the bid, to warrant the chancellor in disapproving the master's report of sale. The power to disapprove a sale for gross inadequacy of bid exists independent of an economic depression. The chancellor abused his discretion and erred in refusing to approve the sale at $50,000.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court of Cook county, with directions to approve the master's report of sale.

*Reversed and remanded, with directions.*

STONE and SHAW, JJ., specially concurring:

We agree with the result reached but not in all that is said in the opinion.

Mr. CHIEF JUSTICE HERRICK, dissenting:

I concur in the legal conclusion reached in the majority opinion that the chancellor had the power to fix an upset price for the sale of the property against which foreclosure was sought. He set the upset price on the re-sale order at $71,508.45. He found that the market value of the property was $80,000. The majority opinion shows that the hearing as to the value of the property was on affidavits. Those of appellant tended to establish a value of $40,000 to $50,000; those of appellee, from $77,400 to $80,000. The upset price established by the chancellor was clearly within the scope of the evidence. This court has consistently held on issues involving the value of property, where the value was fixed by the verdict of a jury on conflicting evidence, that, in the absence of material error, this court would not disturb the finding of the jury where the amount determined was within the range of the evidence and not the result of passion and prejudice. (*Department of Public Works* v. *Foreman Bank,* 363 Ill. 13, 24.) In my opinion we should accord to the finding of the chancellor on the question of value the same credit we do to a verdict of a jury on that subject. The application of this rule to the instant cause would result in the affirmance of the decree. The judgment of the Appellate Court and the order of the superior court should each have been affirmed.

Mr. JUSTICE ORR, also dissenting:

I disagree with that portion of the opinion holding that a court of chancery, in a foreclosure case, has inherent power to fix an upset price to be bid at the sale. In my opinion, this court should adhere to the contrary rule laid down in *Chicago Title and Trust Co.* v. *Robin,* 361 Ill. 261.