(No. 23589.—

MELVIN L. STRAUS, *vs.* CLARENCE A. ANDERSON *et al.*—
(GEORGE W. ROSSETTER *et al.* Appellants, *vs.* HAROLD
FACTOR, Appellee.)

*Opinion filed June 11, 1937.*

STONE, ORR, and SHAW, JJ., specially concurring.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, JUDAH, REICHMANN, TRUMBULL, COX & STERN, and GOTTLIEB & SCHWARTZ, (DAVID LEVINSON, ISAAC E. FERGUSON, and FRANK BLOOM, of counsel,) for appellants.

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, of counsel,) for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

By virtue of a decree of foreclosure entered by the circuit court of Cook county on December 1, 1932, the master in chancery, on August 23, 1934, sold the Dellashore Apartments located at 257 East Delaware Place, Chicago. Subject to the taxes hereinafter mentioned, the sale was made for $35,000 to Irving Feldinger, as the nominee of the first mortgage bondholders' committee (hereinafter referred to as the committee) pursuant to a plan of re-organization theretofore adopted by the committee. At that time approximately seventy-five per cent of the bondholders had assigned their bonds to the committee and deposited them with the designated depositary, under an assent to and acceptance of the re-organization plan. Later the number of assenting bondholders represented by the committee was increased to between seventy-eight and eighty per cent. The

purchaser at the sale paid $6521.51, in cash, representing. the proportionate share of the purchase price of non-depositing bondholders, and delivered unpaid bonds and coupons to the master in settlement of the balance. This money was furnished the purchaser by the trustee from the rents collected by him from the premises. A deficiency decree was entered for $243,115. Prior to the sale, and on June 23, 1934, Harold Factor, hereinafter referred to as appellee, the owner of $3600 of the bonds, asked leave to file his intervening petition. The object sought by it was the removal, by the court, of the existing trustee and the appointment of a new trustee, who should be directed to bid the full value of the property for the protection of all bondholders alike, and that the court retain jurisdiction of the subject matter of the trust and enter such orders as should protect all bondholders, equally, in connection with the trust estate. Hearing thereon was continued to the September term. On August 31, the committee asked leave to file its petition for confirmation of the sale, setting forth therein the amount of outstanding bonds it represented, that it had caused its nominee to bid in the property, had promulgated a plan of re-organization and desired the court to consider it, a notice of adoption of which, and a summary thereof, having previously, on July 18, 1934, been sent to all non-depositing bondholders. That it was the committee's wish to accord to all bondholders who had not previously deposited their bonds, an opportunity to participate in the plan of re-organization upon such terms as the court might direct, and it prayed the court to supervise the consummation of the plan of re-organization. Leave to file this petition was granted. The court thereupon entered an order directing the master to notify all bondholders who had not theretofore deposited their bonds with the committee, and whose names were to be furnished him by the committee, that a hearing would be had on September 12, at which time the court would pass upon the

master's report of sale and distribution, and the plan of re-organization. That any bondholder might then submit objections to the report of sale and distribution, and to the plan. Pursuant to the provisions of this latter order the master, on the same day, sent the required notice to all non-depositing bondholders, in which he also advised that their *pro rata* share of the foreclosure sale would be approximately eleven cents on the dollar. Appellee filed objections both to the report and to the plan. At the hearing, appellee's objections were overruled, the master's report of sale and distribution was approved and the motion of appellee for leave to intervene, denied. The court reserved jurisdiction for the purpose of supervising and carrying out the plan of re-organization. From these orders appellee took an appeal to the Appellate Court for the First District. That court reversed both orders, and remanded the cause. (*Straus* v. *Anderson*, 283 Ill. App. 342.) The case now comes here on leave to appeal granted.

A brief statement of the facts pertaining to the controversy is necessary to an understanding of the issues involved. The mortgaged property is a ten-story, brick, fire-proof structure, built in 1917. It contains nine large unfurnished apartments of ten rooms and three baths each. Prior to the depression, these were rented at from $425 to $450 per month, each. At the time of the sale the amount of these rentals had decreased about fifty per cent. The unpaid taxes and accrued penalties, exclusive of the years 1933 and 1934, amounted to approximately $25,000. Prior to the filing of the bill to foreclose, the property was encumbered by three trust deeds in the principal sums as follows: A first for $300,000, on which there was an unpaid balance of principal of $230,000, a second for $100,000 and a third for $60,000. On April 19, 1932, by reason of certain defaults, Melvin L. Straus, as trustee, in his representative capacity, pursuant to the provisions of the trust deed that all right of action to initiate and prosecute fore-

closure was vested in the trustee, filed his bill to foreclose the first trust deed. None of the bondholders were joined as parties complainant. The mortgagor, the owners of the equity, and various parties having interests in the second and third trust deeds, were made defendants. Prior to filing the bill, and in accordance with the provisions of the trust deed, actual possession of the property was surrendered to the trustee by a written instrument bearing date of March 30, 1932. All income since April 1, 1932, has been accumulated by the trustee for the benefit of all first bondholders. The decree of foreclosure provided that the master should sell the property and report the result to the court for its approval.

S. W. Straus & Co., through whom, in the first instance, the bonds had been distributed, being informed of the inability of the mortgagor to meet the payment of principal and interest due on April 1 on the first trust deed, and being aware of the arrears in the payment of certain prior due taxes, formed a bondholders' committee and prepared a deposit agreement dated March 23, 1932. Thereafter, such committee formulated and adopted a plan of re-organization. This plan contemplated the formation of a new corporation, stock in which was to be issued ratably to all bondholders assenting to the plan. It also provided for the payment of stipulated fees to the committee for their services, trustee and depositary fees and expenses, counsel fees and the expenses of re-organization, etc. In order to effect a prompt readjustment and to avoid the necessity of awaiting the expiration of the fifteen months' redemption period, the committee also arranged to acquire, for the benefit of the depositing bondholders, title to the property, together with the second and third trust deeds, from the various holders thereof for the aggregate sum of $3500. It is unnecessary for us to decide whether this plan did cut off the right of redemption of judgment creditors.

The propositions involved in this appeal relate principally to (1) whether the price paid was so inadequate as to warrant a court of equity to disaffirm the sale; (2) whether the sale was fraudulent or unfair because the successful bid was made pursuant to a plan of re-organization; (3) whether a court of equity has the inherent power to pass upon a re-organization plan presented by the purchaser where the bid was made pursuant to such plan, and (4) whether the trial court properly denied appellee the right to file his intervening petition.

In approaching the decision of the issue whether the trial court should have refused to confirm the sale because of the inadequacy of the price bid, it is well to recur to the pertinent principles governing such sales. The question as to the power of a court of equity to refuse to confirm a sale or set aside a sale for mere inadequacy of price has been the subject of much judicial discussion. It would seem, at first impression, that there was much confusion and a great contrariety of opinion amongst the courts and textwriters upon the subject. This apparent lack of harmony has arisen because of the failure to differentiate between the condition of the record before the court as to the sale attacked or sought to be vacated. The setting aside of an executed sale is one character of proceeding. The opposition to the approval of a purported sale requiring the confirmation of the court for its validity and finality, falls into a different classification. In the first mentioned class the sales have been completed, generally, either by reason of the fact that no approval of the court is required, or where such approval, being requisite, has been obtained. Sales grouped within this category will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale. It is out of this division of sales from which the principle emerged that stability should be given judicial sales, and that courts would not void the same in the absence of fraud or some

irregularity in the proceeding attendant upon the sale. In those cases the buyer has an interest or right in the property. In the second division the court, in legal contemplation, is the seller. The officer conducting the sale acts as the agent of the court in offering the property for sale. His declaration striking off the property to the highest bidder carries with it no interest or title to the property. The bid is only an offer to buy. Until, and unless, the court confirms the report of sale made by the officer conducting the sale, there is no sale. In the latter character of sales the chancellor has a broad power in their supervision made under his direction and may, acting in his judicial discretion, confirm, or disapprove any such sale. (*Miller* v. *Miller,* 332 Ill. 177; *Hart* v. *Burch,* 130 id. 426.) In the latter type of sales the court may refuse to confirm the sale merely because of the inadequate price for which the premises are struck off. These principles are recognized in *Levy* v. *Broadway-Carmen Building Corp.* (*ante,* p. 279,) where numerous authorities bearing upon the subject are reviewed.

The record shows that originally this property carried bond issue loans, secured by various trust deeds, aggregating $460,000. The first bond issue was made in 1923 for $300,000. The building was financed by a company now active in the organization and operation of the bondholders' re-organization committee. At the time the bill to foreclose was filed the first mortgage loan had been reduced to $230,000. Having in mind that, at a not very remote period, there must have been some equity in this property in the owners thereof, the price at which the property was struck off to the bondholders' committee shocks the average individual. While the amount of encumbrance is no proof of value at the time of the foreclosure sale, (*People* v. *Stevens,* 358 Ill. 391, 405; *People* v. *Johnson,* 355 id. 380, 389;) yet there remains the fact that experienced real estate bankers did regard this prop-

erty, prior to the destruction of values brought on by the depression, as having a substantial value and financed it accordingly. The evidence does show that with real estate values prostrated by the depression, with a dearth of tenants and rental values greatly shrunken, for the year ending December, 1933, the property produced a net income of $11,953.57, exclusive of taxes and an allowance for depreciation and obsolescence, according to an exhibit attached to the petition of the bondholders' committee for the approval of its re-organization plan. The taxes were estimated for the year 1933 at $4350, the tax bill not yet having been received therefor. Based on the figures available for the first quarter of 1934, the like net income for that year was estimated at about $6300. The rental income is one of the methods recognized for fixing the value of property. (*First Nat. Bank* v. *Bryn Mawr Beach Building Corp.* 365 Ill. 409,) but it is not the only criterion. The fair cash market value of property at the time in question, for the highest and best use for which it was adapted, is generally recognized as a rule for determining its value. *People* v. *Stevens, supra; People* v. *Bain,* 359 Ill. 455, 479, 480.

On the hearing of the objections to the confirmation of the sale, the objector offered the evidence of a qualified and apparently disinterested real estate broker who had examined the property and stated that its fair cash market value at the time of the sale was $150,000. The chairman of the bondholders' committee was a real estate expert, but he did not testify as to the value of the premises. In fact, the bondholders' committee offered no evidence as to the worth of the property at this hearing. In order that we may not be misunderstood, what we have stated as to the rental income is gleaned from a writing purporting to be a trustee's report attached to the petition to approve the re-organization plan, which was filed more than sixty days before the sale was made. There was no evidence

that the property was out-moded or in a bad state of repair or that there was any loss in value by reason of depreciation or obsolescence. Under the principle announced in *First National Bank* v. *Flershem,* 290 U. S. 504, 78 L. ed. 465, the re-organization committeee should have offered some competent evidence tending to show the sale price was adequate. A trustee is the representative of all the bondholders and owes an equal duty to protect the security of each. Except in those cases where the mortgagor possesses outside resources, it is usually to the best interests of the creditors that the mortgaged property bring the best obtainable price. When some of the creditors organize for the purpose of acquiring the ownership of the property to the exclusion of those not participating in the re-organization, rather than for presently obtaining the debt, or some part of it, due them in money, the situation changes. It is obvious that the interest of the bondholders' committee here was to buy the property at as low a price as possible and likewise, equally apparent, that the interest of the non-depositing bondholders was to have the property bring the highest possible price at the sale. The property did not bring an adequate price and the trial court should have refused to approve the sale. The situation is not that of a stranger to the proceeding who has invested money in his bid, relying upon the regularity of the proceeding. The parties here were all parties to the cause and not strangers to the record. No guaranty of a higher bid on a re-sale of the property was necessary. (*Bondurant* v. *Bondurant,* 251 Ill. 324, 329.) Inasmuch as there must be a re-sale of the premises it follows that the court erred in approving the present plan for the re-organization of the property. However, the trial court does possess ample power to approve an adequate and proper re-organization scheme. (*First Nat. Bank* v. *Bryn Mawr Beach Building Corp. supra.*) In supervising sales a court of equity should protect all the conflicting interests as nearly as may be consistent

with law and equity. The minority should not be permitted to assume a position whereby the nuisance value of their claims may be used to oppress the majority nor should the majority be permitted to use their power and position to render the minority impotent. ·

In ordering a re-sale of the property the trial court has the power to fix an upset price prior to the sale, (*Levy* v. *Broadway-Carmen Building Corp. supra,*) but has no authority, under the provisions of the trust deed in this case, to direct the trustee to bid in the property for the benefit of all the bondholders. (*Chicago Title & Trust Co.* v. *Robin,* 361 Ill. 261.) The circuit court should have permitted the filing of appellee's intervening petition.

The judgment of the Appellate Court, so far as it ordered a re-sale of the property and permitted the intervening petition to be filed, is affirmed, but its holding that the circuit court of Cook county was without jurisdiction to approve a re-organization plan for the property, is reversed. The orders of the circuit court are reversed, and the cause is remanded for further proceedings in harmony with the views herein expressed.

*Appellate Court judgment affirmed in part and reversed in part.*
*Circuit court orders reversed, and cause remanded, with directions.*

STONE, ORR, and SHAW, JJ., specially concurring:

We agree with the result reached in this opinion but not in all that is said therein, particularly with regard to the power of a court of chancery, in a foreclosure proceeding, to fix an upset price.