City National Bank and Trust Company, Appellee, v. James J. O'Keefe, Appellant.

Gen. No. 39,397.

Opinion filed February 28, 1938.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellant.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for appellee; VINCENT O'BRIEN, JOHN MERRILL BAKER and WALTER SCZUDLO, all of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action brought by the successor trustee to foreclose a trust deed a decree was entered on the recom-

mendation of a master on May 11, 1936. The decree directed that in default of payment of the amount found due the premises should be sold by the master subject to redemption. July 30, 1936, pursuant to notice, the master offered the premises for sale and James J. O'Keefe bid the sum of $5,000, and that being the highest and best bid offered, the master accepted it. While the sale was made on July 30, 1936, the report of sale was not filed in the superior court until November 5, 1936. The report stated that O'Keefe had paid on account of his bid the sum of $500, and that there was a deficiency of $23,165.88. On the same day the report was filed the court entered an order finding that $5,000 was not a fair and reasonable bid, and that for that reason the sale should be set aside, and the master was directed to return to the bidder the $500 or any portion thereof in his hands and to hold a new sale within 60 days, complying with the provisions of the decree.

November 13th O'Keefe filed his petition in the cause, setting up that the sale was subject to taxes, which, with the penalties, amounted to between $4,000 and $5,000; that the entire bond issue secured by the trust deed was originally $22,000, upon which $2,000 had been paid; that the premises were located at 5048 West Quincy street in Chicago and were improved with a 3-story brick building containing six 3-room apartments and a 3-car brick garage; that the premises were not worth more than $12,000; that in a cross-bill filed by the Central Trust Company, who preceded the present successor trustee, it was represented under oath by one of its officers that the premises could not be sold for a sum in excess of $15,000, and that the premises were worth not to exceed that sum; that on November 5, 1936, attorneys for the successor trustee served notice that on November 5, 1936, they would file the master's report of sale or move that a hearing be set

for an early date; that Judge Miller at that time was ill and absent and his motions were heard by Judge Allegretti; that the attorneys for the successor trustee at that time moved that the sale be set aside on the sole ground that the bid, as set forth, was inadequate; that the court entered an order prepared by attorneys for the plaintiff, no copy of which had been submitted to the petitioner, and that no copy was given to them until after the entry of the order.

The petitioner averred that his bid was made at an open advertised judicial sale at which attorneys representing all the outstanding bonds and the successor trustee were present; that his bid was the highest; that the price is adequate; that by reason of the deficiency petitioner will not be entitled to rents for 15 months; that during that period there will be an accrual of additional taxes; that upon a representation to the court by the trustee that the premises were not worth more than $15,000 the court appointed a receiver on or about March 25, 1933; that the receiver has been in possession and money in his hands will be applied on the indebtedness to the bondholders. The petition prayed that the order of November 5, 1936, should be set aside and the master's report of sale be approved and the sale confirmed. The petition was duly verified.

The successor trustee answered, admitting the sale of the premises by the master at public sale after due notice and advertisement, and that O'Keefe was the highest and best bidder, and the sale to him subject to unpaid taxes. The answer states that a bondholders' committee had not prepared a plan of reorganization and was not in a position to make a bid prior to the sale; that such plan of reorganization was in the process of preparation; that petitioner through his solicitors moved that a sale be had before the plan of reorganization could be completed and a competitive bid made by the bondholders' committee; that the committee attempted to secure an outside bidder but was not

successful until after the sale was held; upon the information and belief it was averred that the petitioner was the owner of the equity of redemption; that the bid made by him was not for the benefit of the majority of the bondholders. It denies that the premises are not worth more than $12,000 but admits that an officer of the Central Republic Trust Company, trustee, had stated under oath that the premises could not be sold for a sum in excess of $15,000; that the total amount of indebtedness, including master's fees, etc., was $28,165.88, which would leave a deficiency of $23,165.88; that the costs and prior items which would be disbursed out of the price bid totaled $2,558.09, and that a balance of only $2,441.91 would be available for distribution to the holders of bonds, being about 11 per cent of the face amount of the principal indebtedness; that the bondholders' committee had secured a bidder who would offer from $2,000 to $4,000 more than the bid of petitioner; that upon the hearing of the report of sale Mr. Benjamin E. Sherman appeared in open court and stated he would offer from $2,000 to $4,000 more at any competitive sale that might be held, and offered to guarantee at least a bid of $2,000 more than the bid of petitioner. The answer averred that the sale was set aside on motion of the court after the statements of counsel for petitioner and after the statement of the solicitors for the successor trustee; that the draft order was read and an addition thereto made in the handwriting of the judge. This answer also was duly verified.

The cause came on for hearing November 13, 1936, upon the petition and answer and statements of counsel made in open court, and an order was entered denying the prayer of the petition, from which petitioner has appealed.

It is contended on behalf of O'Keefe that the chancellor acted arbitrarily in refusing to approve the master's report of sale, in setting it aside and in directing

that another sale be made. It is argued that the record discloses no legal objections sufficient to justify the disapproval of a judicial sale; that there was no fraud, mistake or irregularity; that none of the parties was under disability; and that the court was therefore bound to approve the report of sale and erred in setting it aside. The cases relied upon are *Chicago Title & Trust Co. v. Robin,* 361 Ill. 261, and *Glanz v. Taken,* 293 Ill. App. 74. The decisions upon the questions presented by this record have not been altogether uniform. In recent cases the Supreme Court has clarified the law applicable. In *Straus v. Anderson,* 366 Ill. 426, the law with reference to judicial sales of this kind is stated as follows: "The question as to the power of a court of equity to refuse to confirm a sale or set aside a sale for mere inadequacy of price has been the subject of much judicial discussion. It would seem, at first impression, that there was much confusion and a great contrariety of opinion amongst the courts and textwriters upon the subject. This apparent lack of harmony has arisen because of the failure to differentiate between the condition of the record before the court as to the sale attacked or sought to be vacated. The *setting aside of an executed sale* is one character of proceeding. The opposition to the approval of a purported sale *requiring the confirmation of the court for its validity and finality, falls into a different classification.* In the first mentioned class the sales have been completed, generally, either by reason of the fact that no approval of the court is required, or where such approval, being requisite, has been obtained. Sales grouped within this category will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale. It is out of this division of sales from which the principle emerged that stability should be given judicial sales, and that courts would not void the same in the absence

of fraud or some irregularity in the proceeding attendant upon the sale. In those cases the buyer has an interest or right in the property. In the second division the court, in legal contemplation, is the seller. The officer conducting the sale acts as the agent of the court in offering the property for sale. His declaration striking off the property to the highest bidder carries with it no interest or title to the property. The bid is only an offer to buy. Until, and unless, the court confirms the report of sale made by the officer conducting the sale, there is no sale. In the latter character of sales the chancellor has a broad power in their supervision made under his direction and may, acting in his judicial discretion, confirm or disapprove any such sale. (*Miller v. Miller,* 332 Ill. 177; *Hart v. Burch,* 130 id. 426.) In the latter type of sales the court may refuse to confirm the sale merely because of the inadequate price for which the premises are struck off. These principles are recognized in *Levy v. Broadway Carmen Building Corp.* (*ante,* p. 279), where numerous authorities bearing upon the subject are reviewed."

This classification was applied by the second division of this court in the case of *Chicago City Bank & Trust Co. v. Johnson,* 293 Ill. App. 564. In that case the sale had been executed and the court held that in the absence of well recognized equitable grounds, such as fraud or irregularity, the court might not set the sale aside. This record presents a question arising upon an unexecuted sale, one in which the bid made to the master amounts only to an offer which does not become a sale until it has been confirmed by the court. *Glanz v. Taken,* 293 Ill. App. 73, was a case of this kind, but the opinion indicates that the decisions of *Levy v. Broadway-Carmen Bldg. Corp.,* 366 Ill. 279, and *Straus v. Anderson,* 366 Ill. 426, and *First National Bank v. Bryn Mawr Beach Bldg. Corp.,* 365 Ill. 409, were not called to the attention of the court.

On the undisputed facts in this case as disclosed by the petition, the answer and the statements made by counsel on the hearing of the cause, we think it was clearly within the discretion of the chancellor to refuse to confirm the sale, and that he did not err in setting it aside.

For the reasons indicated the order is affirmed.

*Affirmed.*

O'Connor, P. J., and McSurely, J., concur.