Chicago City Bank and Trust Company, Plaintiff, v. Elof W. Johnson et al., Defendants.
Hannah M. Smith, Appellant, v. Chicago City Bank and Trust Company et al., Appellees.

Gen. No. 39,607.

Opinion filed February 15, 1938. Rehearing denied and additional opinion filed March 1, 1938.

Joseph Z. Willner, of Chicago, for appellant.

Hyman J. Rosenberg and Louis T. Herzon, both of Chicago, for appellees.

Mr. Presiding Justice Friend delivered the opinion of the court.

Hannah M. Smith became the purchaser at a master's sale held pursuant to the entry of a foreclosure decree. She paid the purchase price in full and procured an order of court approving the sale. The master's certificate was issued and delivered to her and was recorded in the registrar's office on the certificate of title. Thereafter, within the term, the chancellor set aside the sale, declared the master's certificate to be null and void, ordered the master to refund the purchase price, accepted a higher bid made by the nominee of a bondholders' committee, and confirmed the sale to him in pursuance of a plan for reorganization of the property involved. By this appeal Hannah M. Smith seeks to reverse the order setting aside the sale to her and confirming the sale to the nominee of the bondholders' committee.

The circumstances of this controversy present an unusual situation. The original decree of foreclosure was entered August 27, 1934, but no sale was held thereunder until about two years later, when, pursuant to

the filing of a petition by Louis T. Herzon, attorney for a majority of the bondholders, he represented to the chancellor that a plan for reorganization of the property had been formulated by a bondholders' committee, which could not become effective until a sale of the premises was had under the decree, and asked for the entry of an order directing plaintiff in the foreclosure suit to institute the necessary proceedings for the sale of the property. Thereupon, July 31, 1936, the chancellor ordered plaintiff to immediately instruct the master in chancery to advertise the premises for sale and to proceed with the sale according to the terms of the decree. The master's sale was accordingly held and the property was bid in by one Ethel Cooper, stenographer in the office of Herzon, attorney for the bondholders, but her bid was never made good and no portion of the purchase price was paid to the master. After notice to Ethel Cooper and Herzon this sale was set aside and the master was ordered to proceed to again advertise the premises for sale.

A second sale was held October 23, 1936, at which the property was sold to Hannah M. Smith, the highest and best bidder, for $8,000. The motion of the purchaser to confirm and approve the sale, made November 9, 1936, was continued several times at the request of Herzon, upon his representation that the bondholders desired to make a better bid for the property. Finally, January 8, 1937, some three and one-half months after the sale was held, the court entered an order finding that the master had in every respect proceeded in due form of law and in accordance with the terms of the decree, that the sale was fairly and properly made, that an appraisement by the Chicago Real Estate Board was presented in open court showing the premises involved to have been appraised as of November 14, 1936, for $29,011; that there was presented in open court a statement of the taxes upon the premises

showing $15,972.06 to be due, and ordering the sale approved and confirmed. At the same time the court also entered an order that the petition of certain bondholders, represented by Herzon, to vacate the sale held October 23, 1936, be denied.

Subsequently, January 12, 1937, Herzon, as attorney for three individuals designated as a bondholders' committee, filed a petition to vacate the order of January 8, 1937, approving and confirming the sale to Hannah M. Smith, and asking for approval of a bid made by Otto Koutesky, nominee of the bondholders' committee, for $16,000. The petition set forth the interest of the petitioners as bondholders; that the fair market value of the premises was approximately $30,000; that the general taxes amounted to some $16,000; that Hannah M. Smith became the purchaser at the sale and had bid in the property at $8,000; that immediately after ascertaining the facts petitioners appeared before the court on November 9th and moved for the vacation of the sale; that petitioners, as a bondholders' committee, had secured a deposit of bonds and certificates of deposit to the amount of approximately $42,000 out of a total outstanding issue of $54,000, and were authorized to make a bid for the property in the name of the nominee; that January 4, 1937, Otto Koutesky was designated as the nominee of the bondholders' committee to appear before the chancellor and make a bid of $20,000 and did in fact appear and make such a bid, but the chancellor refused to accept the bid until the bonds to be applied on the purchase and the cash necessary to take care of nondepositing bondholders was actually tendered in open court; that petitioners were taken by surprise, in having been required to produce the bonds and cash with their bid, and not having the bonds and cash in court, the sale to Hannah M. Smith was approved and confirmed. When this petition was presented to the chancellor January 12, 1937,

an order was entered continuing the hearing until January 26th, and on that date the petition was overruled and denied.

February 2, 1937, Herzon again appeared in court as attorney for the bondholders' committee and asked leave to file another petition to set aside the sale to Hannah M. Smith. Objection to the filing of the petition was sustained by the court and an order was entered again reciting the purchase of the property at the master's sale by Hannah M. Smith, the confirmation thereof, the subsequent motion of petitioners to vacate the order approving the sale, and the refusal of the court so to do, and also finding that Hannah M. Smith, the holder of the master's certificate, had appeared in open court and represented to the chancellor that she had ordered tax bills from the county treasurer and would in 10 days pay the delinquent taxes on the property.

February 8, 1937, Herzon appeared before the chancellor for the third time with cocounsel, representing that he had served notice of the filing of another petition to vacate the order confirming the sale to Hannah M. Smith. This petition was similar in form to the other petitions filed by Herzon, except that it set forth that the bondholders' committee then had on deposit $48,400 in bonds instead of $42,000, and that the property was worth $42,000 instead of $30,000, as set forth in the previous petition. Upon the hearing of this petition the court again found that the property had been appraised by the Chicago Real Estate Board at $29,011. and that the sale to Hannah M. Smith was conducted in good faith and that she had become the purchaser of the premises at the sale in good faith; that the bondholders' committee had bid $16,000 for the premises involved, and were ready to pay that sum by applying bonds in their possession in part payment of the bid and sufficient cash to cover costs and the pro rata share

to nondepositing bondholders; that the bid of $16,000 was fair, reasonable and equitable, and that it would be to the best interests of all bondholders that the $16,-000 be accepted, approved and confirmed; and the court thereupon ordered, adjudged and decreed that the order of January 8, 1937, approving and confirming the master's report of sale of October 23, 1936, to Hannah M. Smith, be vacated, annulled and set aside; that any and all subsequent orders thereafter entered in connection with the approval and confirmation of the master's sale be likewise vacated and set aside; that Herzon's petition of February 8, 1937, should stand as objections to the master's report of sale and be accordingly sustained; that the sale of the premises to Hannah M. Smith for $8,000 be set aside, vacated and annulled; that the master's certificate of sale theretofore executed and delivered to Hannah M. Smith and recorded in the registrar's office on the certificate of title, be declared null and void and of no effect, and all rights and interests acquired thereby be terminated and canceled; that the master in chancery be directed and authorized to forthwith restore to Hannah M. Smith $8,000, upon obtaining from her the necessary quitclaim deed or release or any other instrument evidencing her release of title and interest in the premises. The court thereupon accepted the bid of Otto Koutesky for $16,000, made in open court, and the premises were sold to him for that sum and the sale approved and confirmed.

In justification of the chancellor's last order, setting aside the confirmation of the sale to Hannah M. Smith, counsel for the bondholders' committee first argue that the record of an order, judgment or decree is under the control of the court during the term at which it was entered. This may be conceded to be the general rule of law, but it has certain limitations applicable to the circumstances of this case. The authorities are in ac-

cord in holding that sales by masters are not sales in a legal sense until they are confirmed; that the accepted bidder acquires no independent right to have his purchase completed, but remains only a preferred proposer until a confirmation of the sale by the court; that confirmation is official consent, and the court being in fact the vendor may consent or not in its discretion. (*Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279; *Hart v. Burch*, 130 Ill. 426; *Jennings v. Dunphy*, 174 Ill. 86.) The authorities are also in accord in holding that when a sale has been fairly made and confirmed, and all parties in interest had an opportunity to bid on the property at the sale, neither inadequacy of price nor offers of better prices, nor anything but fraud, accident, mistake or some other *cause* for which equity would void a like sale between private parties, will warrant a court in voiding a confirmation of the sale or in opening the latter and receiving subsequent bids. It was expressly so held in *Morrison v. Burnette,* 154 Fed. 617. In that case the court characterized this rule as being ''so firmly established that it is no longer debatable,'' and stated the cogent and all sufficient reason for it to be that ''judicial sales would become farces, and rational men would shun them and refuse to bid, if after the confirmation unsuccessful bidders or dissatisfied litigants could avoid them and secure new sales by offers of higher prices, when they thought the purchase a fortunate one, and thus secure the profits in that event, and leave the buyer to suffer the losses if the property depreciated in value or the purchase was unwise.''

Under the circumstances it is beside the question to argue that the court had jurisdiction within the term to set aside the sale. The question of jurisdiction may be conceded, but whether the chancellor abused his discretion to set aside an executed sale, even though within the term, presents an entirely different issue.

A sale cannot arbitrarily be set aside except for *good cause,* and by good cause is meant some cogent reason, such as fraud, accident, mistake or collusion, generally recognized as an equitable ground for setting aside an order. The mere receipt of a higher bid by the bondholders, who had an opportunity to bid in the first instance, is not a sufficient reason for voiding a sale, especially where the court has repeatedly found that it was made in good faith and pursuant to an appraisal by the Chicago real estate board, which the court approved.

In *Straus v. Anderson,* 366 Ill. 426, the court discussed the two aspects of judicial sales and characterized *the setting aside of an executed sale* and *the opposition to the approval of a purported sale,* requiring confirmation of the court for its validity and finality, as falling into different classifications. With reference to the first character of proceeding, namely, an executed sale, it was said (p. 431): ''In the first mentioned class the sales have been completed, generally, either by reason of the fact that no approval of the court is required, or where such approval, being requisite, has been obtained. *Sales grouped within this category will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale. It is out of this division of sales from which the principle emerged that stability should be given judicial sales, and that courts would not void the same in the absence of fraud or some irregularity in the proceeding attendant upon the sale.* In those cases the buyer has an interest or right in the property.'' (Italics ours.)

With reference to the second category of cases discussed, namely, where opposition to the approval of the sale is made, the court discussed the matter as follows (p. 432): ''In the second division the court, in legal contemplation, is the seller. The officer conduct-

ing the sale acts as the agent of the court in offering the property for sale. His declaration striking off the property to the highest bidder carries with it no interest or title to the property. The bid is only an offer to buy. Until, and unless, the court confirms the report of sale made by the officer conducting the sale, there is no sale. In the latter character of sales the chancellor has a broad power in his supervision made un-der his direction and may, acting in his judicial discretion, confirm, or disapprove any such sale. (*Miller v. Miller,* 332 Ill. 177; *Hart v. Burch,* 130 id. 426.) In the latter type of sales the court may refuse to confirm the sale merely because of the inadequate price for which the premises are struck off. These principles are recognized in *Levy v. Broadway-Carmen Building Corp.* (366 Ill. 279) where numerous authorities bearing upon the subject are reviewed." We take this to mean that in the case of executed sales there is no discretion in the chancellor to set the sale aside except upon some well recognized equitable ground, such as fraud or irregularity, and the discretion which counsel for the bondholders' committee say the chancellor had exists only in that class of cases where opposition is made to the approval of the sale, and cannot arbitrarily be exercised except for *good cause* in the case of executed sales.

During the pendency of this appeal Hannah M. Smith's counsel cited by way of additional authority the recent case of *Glanz v. Taken,* 293 Ill. App. 74, in which the third division of this court reversed an order of the chancellor setting aside a master's sale. That case is not applicable to the circumstances of this proceeding, however, because the master's sale in that case had not previously been confirmed.

The sale to Hannah M. Smith was in every sense an executed sale. It had been approved. The court had subsequently reaffirmed that it was made in good faith,

pursuant to an accepted appraisal of the property for $29,000. The purchase price of $8,000, when added to the delinquent taxes aggregating some $16,000, made the bid substantially $24,000. This as against an appraisal of $29,000 would not subject the bid to the criticism that it was so grossly inadequate as to constitute fraud. Moreover, the purchase price had been paid the master's certificate had issued and been recorded and the purchaser said in open court that she had ordered the bills for delinquent taxes and would pay them within a week or 10 days. In all the petitions filed there is no charge of fraud, irregularity, mistake or collusion. The only reason urged for accepting the bondholders' bid is that it would be to the interest of the bondholders to sell the property to their nominee because it was in pursuance of a plan for reorganization to which some 90 per cent of the bondholders had agreed. All these facts were well known to the bondholders when the sale was made, and they had full opportunity to bid. In fact Ethel Cooper did purchase the property in the first instance on behalf of Herzon, who represented the bondholders, but failed to make good her bid. These facts were all known to the court and we cannot find anything in the record to justify the exercise of a discretion by the chancellor, after twice denying the bondholders' petitions to eventually set aside the sale.

The remaining contentions urged by the bondholders' committee for sustaining the court's order are based upon the erroneous premise that the chancellor "has refused to approve and confirm the sale, as in the case at bar." These contentions do not conform with the facts of the case, because the chancellor not only approved and confirmed the sale but on two subsequent occasions fortified his action by finding that the sale was made in good faith and denying petitions to vacate the order of approval.

For the reasons set forth, we are of the opinion that the chancellor erred in entering the order of February 15, 1937, vacating the order approving the sale to Hannah M. Smith, and that order is accordingly reversed.

*Order reversed.*

Scanlan and Sullivan, JJ., concur.

ADDITIONAL OPINION ON PETITION FOR REHEARING.

Since the filing of the opinion in this cause petitioners, Julius Rutz, Michael A. Howard and Jack Dellefield, individually and as bondholders constituting the bondholders' protective committee, have petitioned the court for a rehearing, and the principal ground urged therefor is that neither petitioners nor their attorney of record nor any of the bondholders were present at the sale of October 23, 1936, and being parties in interest "have not had an opportunity to bid at said sale." This question is raised for the first time on petition for rehearing. In their brief on appeal counsel for petitioners made and argued only the three following points:

1. It is a general rule that during the term at which an order, decree, or judgment is entered the court has control over the record and for cause appearing it may amend its judgments, orders or decrees or set them aside.

2. A chancellor has broad discretion in approving or disapproving a master's sale, and such discretion, unless abused, will not be interfered with by a court of review.

3. Where a sale is subject to the approval of the court, the officer conducting the sale, acting as agent of the court in offering the property for sale, the bidder acquires no interest or title to the property, and the court may refuse to confirm the sale merely because of the inadequate price for which the premises were struck off.

None of these propositions have any relation to the present contention. The law is well settled that the parties cannot for the first time on petition for rehearing raise questions which were not urged or argued on appeal. (*Welch v. City of Chicago*, 323 Ill. 498, 508.)

Moreover, if the question had been raised it would have been overruled because it clearly appears from the record that after the motion to approve the sale held on October 23, 1936, was made, the court continued the matter to November 9, 1936, from November 9, 1936, to November 19, 1936, from November 19, 1936, to December 18, 1936, and from December 18, 1936, to January 8, 1937, for the specific purpose of giving the bondholders an opportunity of making a better bid on the property than the one made by Hannah M. Smith. During this period of over two months the bondholders did not see fit to make a better or higher bid, and the court ultimately approved the sale. Under the circumstances, it is idle for the petitioners to contend that neither they nor their attorneys nor any of the bondholders had an opportunity to bid at the sale. They were given ample opportunity to present a better bid and either failed or neglected to do so. The petition for rehearing is therefore denied.

*Petition for rehearing denied.*

Scanlan and Sullivan, JJ., concur.