NORTHLAND GREYHOUND LINES, Inc., v. AMALGAMATED ASS'N OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, DIVISION 1150, et al.

Civil Action No. 1937.

District Court, D. Minnesota, Fourth Division.

June 5, 1946.

432

Bowen & Bowen, of Minneapolis, Minn., for plaintiff.

John A. Goldie and Samuel I. Sigal, both of Minneapolis, Minn., for defendants.

JOYCE, District Judge.

 This suit is brought under 28 U.S. C.A. § 400 for a declaratory judgment defining the rights and obligations of the parties under a contract between them. The plaintiff is a motor carrier and the defendants are the Union representing plaintiff's employees and its officers and agents. Jurisdiction is properly invoked because of diversity of citizenship and the requisite jurisdictional amount. The type of contract involved is a proper subject for the invocation of the Declaratory Judgment statute. Texoma Natural Gas Co. v. Oil Workers International Union Local No. 463, D.C., 58 F.Supp. 132 affirmed, 5 Cir., 146 F.2d 62, certiorari denied 324 U.S. 872, 65 S.Ct. 1017, 89 L.Ed. 1426.

The dispute between the parties arises by virtue of certain changes in the existing contract proposed by the Union. Negotiations between the parties have failed to produce an agreement and the Union has invoked the arbitration clause in the contract. The Company asserts (a) that the proposed changes are not given in accordance with the notice required in Section 26 of the contract, (b) that even if they were so given the arbitration clause does not cover changes in or amendments to the contract itself. This matter was first before the court on April 30, 1946, on plaintiff's application for a temporary injunction seeking to restrain further arbitration proceedings. This motion was denied principally because of the lack of showing of any irreparable injury. The company has now moved (1) to strike the second and third defenses of defendant's answer and (2) for summary judgment. Defendant has moved under Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to advance the case on the calendar. The motion to strike has been denied and as the motion to advance is dependent upon the disposition of the motion for summary judgment, it is to the latter motion that this memorandum is directed.

 The pleadings and affidavits are quite complete. They disclose the contractual relations between the parties for several years past including the facts leading up to the execution of the contract in

suit. Although the parties draw different conclusions from certain facts, there is no controversion of any material fact and therefore no genuine issue for trial. Summary judgment is proper in such a case. Although Rule 56 (c) provides in part "the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," and defendants here have filed no cross-motion, it seems to me that where the case is properly disposable by summary judgment the court should enter whatever judgment is proper in the circumstances. This should be particularly true where the relief asked is a declaration of the rights of the parties to a contract under the Declaratory Judgment statute. While it may be the better practice to file a cross-motion I do not think that Rule 56 (c) proscribes the court's power to enter judgment because of the mechanical failure of one of the parties to file a motion. This view finds support in 3 Moore's Federal Practice, Sec. 56.02 page 3183:

"If either the proponent of a claim or the defending party moves for a summary judgment, and the court finds that the moving party is not entitled thereto, but that the other party is so entitled, it would seem that the court has the power to enter the proper judgment, although a cross-motion therefor was not made."

The effect of such a judgment would be, technically, the granting of the motion for summary judgment even if not entirely in accordance with the prayer of the moving party. Both parties have taken the same approach to the problem, that is, (1) each contends that from the plain language of the contract he is entitled to summary judgment, (2) that if the contract is unclear or ambiguous the surrounding circumstances resolve the doubtful meanings in their favor, (3) that there are no material facts that do not appear in the pleadings and affidavits. The disputed portions of the contract are Section 26, which reads:

"Section 26. This Agreement shall be in effect from May 1, 1944, to and including September 30, 1945, and shall remain in effect from year to year thereafter unless terminated, changed, added to, amended or modified as herein provided.

"Either party desiring to change, add to, amend or modify this Agreement October 1 of any year shall notify the other party of such desire in writing at least sixty (60) days prior to October 1, 1945, or any annual renewal thereof, whereupon the parties agree to meet within fifteen (15) days from receipt of such notice and commence negotiations for a new Agreement.

"Either party desiring to terminate this Agreement shall notify the other party in writing at least sixty (60) days prior to October 1, 1945, or any annual renewal thereof."

and Section 2.A:

"The Company agrees to meet and treat with the duly accredited officers and committees of the Amalgamated upon all questions relating to hours, wages and working conditions, and should any difference arise between them which cannot be mutually adjusted, the same shall be submitted at the request of either party to a Board of Arbitration to be selected forthwith in the manner following:"

 The first question is whether the proposed changes in the contract are governed by the provisions of the contract. If not, of course the question of whether the arbitration referred to in Section 2.A is applicable to changes in the contract would become moot so far as this case is concerned. The contract is dated December 23, 1945 but was actually signed by the parties on March 6, 1946. Similar contracts had been in effect since 1938 one of which bore expiration date of May 1, 1944. More than sixty days prior thereto the Union had served notice of proposed changes or amendment and the Company had served notice of termination, all in accordance with Section 26, which read the same then as it does in the present contract. Negotiation did not produce a new contract nor was arbitration resorted to. Defendant's counsel explains that the reason arbitration was not then resorted to was plaintiff's notice of termination which would have terminated the contract by its terms on April 30, 1944

**434**

made any proceedings thereafter under that contract impossible. Being unable to agree, the matter was referred to a United States Conciliation Commissioner and later to the National War Labor Board, the parties having agreed by stipulation to make any changes or amendments retroactive to May 1, 1944. The hearings before the panel of the War Labor Board were not completed until September, 1945 and in the meantime, in February, 1945, presumably to protect its rights under the contract, the Union served a notice of "proposed changes" to become effective May 1, 1945. The Company refused to recognize this notice as the changes to become effective May 1, 1944 were still unsettled and were pending before the War Labor Board. The Union then served a strike notice and the Governor of Minnesota appointed a fact-finding commission all pursuant to the Minnesota Labor Relations Act. Minn.St.1941, § 179.01 et seq. Hearings were had and the fact-finding commission filed its report and recommendations December 14, 1945, among which were that the parties should await the award of the War Labor Board, incorporate it into a contract and should then begin negotiations for changes effective after the termination date of that agreement (which turned out to be April 30, 1945 but which by agreement the parties later extended to September 30, 1945), and that they settle any differences by arbitration. Shortly thereafter, December 23, 1945, the War Labor Board made its report and recommendations substantially all of which were incorporated in the contract now before the court. (It must be borne in mind that the War Labor Board was concerned only with the dispute originating as of May 1, 1944 while the Governor's fact-finding commission was concerned with the 1945 dispute). The parties apparently did not reach complete agreement until January 10, 1946 when they met in the Governor's office and signed a document entitled "Recommendations for Settlement." This document contained some matters not here material, provided for acceptance of the panel report of the War Labor Board, extended the date thereof from April 30 to September 30, 1945, as previously mentioned, and contained this language which is pertinent here:

"With respect to the changes and modifications to become effective October 1, 1945, the parties shall negotiate for a period of thirty days from the date hereof or such additional period as may be mutually agreed upon."

What was the legal effect of this language on the demands for changes effective October 1, 1945 which the Union served immediately after the contract was actually signed? Plaintiff contends that these demands were not served with the notice required by the terms of Section 26 and therefore cannot be considered as within the scope of the contract. Of course, no one could serve a notice sixty days prior to October 1, 1945 when the contract was not consummated until 1946. By the time the contract was signed its initial termination date had passed and it had automatically renewed by its terms. To serve a notice of termination or modification effective in 1945 was a physical impossibility, but it seems to me that the language in the January 10th agreement constitutes an express waiver of the notice requirements of Section 26 so far as changes to be effective October 1, 1945 are concerned. The history of the dealings between the parties makes it clear that the dispute which was before the War Labor Board and which culminated in the contract in suit did not involve any contract changes effective October 1, 1945. That question was raised but held in abeyance pending settlement of the questions which arose in 1944. By the January 10, 1946 agreement the right of the Union to raise and negotiate on those questions was preserved, and it is my holding that the Company thereby waived its right to require the notice ordinarily necessary by the terms of Section 26.

■ The other and more vigorously disputed question is whether when negotiation on changes and modifications fail the parties are bound by the arbitration provisions of Section 2. This question will be considered only in a case where the parties are legally negotiating for changes in an existing contract. Counsel for plaintiff has cited In the Matter of Pennsylvania Greyhound Lines, Inc., et al. and Amalgamated Association, etc., decided by the National War Labor Board May 18, 1944, Case No.

111–4721–D, where an opinion by Lloyd K. Garrison expresses the view that in a contract with a termination and notice clause similar to Section 26 involved here, except that arbitration of contract changes was specifically arbitrable at the will of either party, the serving of a notice of termination of the contract also terminates any contractual liability to arbitrate changes. This view seems sound and was acquiesced in by defendant's counsel on argument. However, the effect of a termination notice on the arbitration clause is not before me because none was given here and both parties agree that they are bound by this contract until October 1, 1946. The parties have actually carried on negotiations for changes to become effective October 1, 1945 but have failed to agree. The Union has sought to invoke the arbitration clause and this suit has resulted.

The language of Section 2.A is extremely broad. By it the Company agrees to "meet and treat with" the Union officers *"upon all questions relating to* hours, wages and working conditions" and to arbitrate any "difference" that may arise. Of course the principal subject matter of the entire contract is hours, wages and working conditions and the changes proposed here deal with nothing else. On its face this section would require that any changes in hours, wages and working conditions proposed by either party would be subject to arbitration if negotiation failed. The only serious question is whether there is anything in Section 26 to prevent this construction. The first paragraph of that section reads:

"This Agreement shall be in effect from May 1, 1944, to and including September 30, 1945, and shall remain in effect from year to year thereafter unless terminated, changed, added to, amended or modified as herein provided."

Then follows provision for sixty day notice before October 1st of any year for changes or termination and in the case of changes the parties agree to "meet" within fifteen days and "commence negotiations for a new Agreement." The parties obviously contemplated a distinction between an amendment or modification and a termination. To speak of amendments as a "new" agreement is not strictly accurate. What did they contemplate would result if the contract were not terminated and negotiations for amendments and modifications relating to wages and working conditions failed? In order to give force and effect to the plain language of Section 2, such a situation would produce a "difference" within the meaning of the arbitration section. There is nothing in Section 26 to the contrary and in no other way can the literal language of the two sections be reconciled. I can see no distinction between an agreement "to meet and treat" as expressed in Section 2.A and an agreement to "commence negotiations" which is the language used in Section 26. Plaintiff contends that it was the intent of the parties to limit arbitration to grievances or questions arising under the administration of the contract. There are no such limitations in the contractual language and in any event it would seem that questions of amendment of a continuing contract are questions arising under the contract and if they pertain to hours, wages and working conditions are arbitrable if a "difference" arises between the parties which cannot be resolved by negotiation.

Any uncertainty in this regard is resolved against plaintiff's position by the fact that on different occasions plaintiff has attempted to amend Section 2.A so as to limit its application to "grievances" and has not been successful. In order to give meaning to the whole contract, it is my conclusion that the differences between the parties arising from the failure of negotiation on the changes proposed in March, 1946 are subject to the arbitration provisions of Section 2.

In conclusion I may state gratuitously that a rewording of the two sections involved here, in the interest of clarity and an adjustment of differences between the parties so that their contract relations would operate prospectively and not retroactively, would be highly desirable and would obviate the necessity of litigation such as this.

Judgment will be entered in accordance with the views herein expressed. Defendant's counsel may prepare findings of fact and conclusions of law and order for judgment and submit them to the court within

five days with copies to opposing counsel. The motion to advance the case on the calendar has become moot and is dismissed.