L. H. Barkhausen and Randolph Bohrer, Individually and Trading as The Doubleby Company, and Herman Brash, Individually, Appellees, v. Continental Illinois National Bank and Trust Company of Chicago, a National Banking Association, as Trustee Under a Certain Indenture of Mortgage, Dated May 1, 1935, Appellant.

Myrtle J. Edwards, Michael K. Irwin, Arthur F. Dufenhorst, Irving Goodman, Flora D. Seefeld, Gertrude R. Sherman and Esther H. Wilets, Bondholders Adversely Affected by Order and Judgment, Appellants.

Gen. No. 46,033.

Opinion filed June 8, 1953. Rehearing allowed September 15, 1953. New opinion filed October 26, 1953. Released for publication December 1, 1953.

EVERETT LEWY, HOFFMAN & DAVIS, and RUBENSTEIN & BECKER, all of Chicago, for certain appellants; HARRY BECKER, MAURICE L. DAVIS, EVERETT LEWY, and IRVING GOODMAN, all of Chicago, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for certain other appellant; SHERWOOD K. PLATT, of Chicago, of counsel.

SWIREN & HEINEMAN, of Chicago, for appellees; MAX SWIREN, BEN W. HEINEMAN, WILLIAM P. ROSENTHAL,

HUBERT H. NEXON, and MASON L. BOHRER, all of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Seven owners of first mortgage leasehold bonds in the aggregate principal sum of $242,500—approximately 10 per cent of the presently issued and outstanding bonds secured by a certain indenture of mortgage, hereinafter referred to as Mortgage Indenture dated May 1, 1935, between 32 West Randolph Corporation (hereinafter referred to as mortgagor) and Continental Illinois National Bank and Trust Company of Chicago, as trustee (hereinafter referred to as Continental, or defendant), appeal from a summary judgment in a declaratory action by L. H. Barkhausen and Randolph Bohrer, individually and as copartners doing business as The Doubleby Co., and Herman Brash, individually (hereinafter called plaintiffs), against Continental as the sole defendant, that neither Barkhausen nor Bohrer, individually nor as copartners, nor Brash, individually, either jointly or severally assumed liability, became liable or is liable for the payment of the principal or interest on the bonds, or any of them, secured by the mortgage indenture, or for the performance of any of the covenants or obligations of the mortgage indenture. They also appeal from an order denying the application of two of their number to be made parties defendant and for leave to file an answer and counterclaim. The defendant, Continental, appeals separately from the judgment.

In the complaint filed May 13, 1952 plaintiffs alleged the execution of the mortgage indenture dated May 1, 1935; that there was then issued and outstanding bonds in excess of the principal sum of $2,300,000, on which interest had been paid in full to and including April 30,

393

1951; that on January 29, 1946 all the right, title and interest of the mortgagor in the mortgaged property, and all right, title and interest of mortgagor under a certain lease to Oriental Theatre Corporation dated January 1, 1936 and all the equipment and personal property in and about the Oriental Theatre was conveyed to Herman Brash as trustee under a trust agreement of the same date, hereinafter referred to as the Brash trust; that by this agreement it was recited that Brash as trustee was about to take title to the above mentioned property; that the beneficiaries of the trust were Barkhausen and Bohrer, copartners doing business as The Doubleby Co.; that the interest of the beneficiaries should consist solely of a power of direction to deal with the title to the trust property, to manage and control that property and the right to receive the proceeds therefrom; that the trustee agreed to deal with the trust property only when authorized to do so in writing by the beneficiaries.

It is further alleged that on the same day, January 29, 1946, Barkhausen and Bohrer, doing business as aforesaid, assigned their beneficial interest in the Brash trust to Continental as security for the mortgage indebtedness, and that by written instrument, hereinafter referred to as the assumption agreement, Brash, not in his individual capacity but in his capacity as trustee under the Brash trust, assumed all of the covenants of the mortgagor in the mortgage indenture; that the assumption agreement was executed pursuant to written authority, direction, consent and approval of Barkhausen and Bohrer as beneficiaries of the Brash trust.

It is further alleged that defaults occurred under the covenants of the mortgage indenture on May 1, 1952, in that the instalment of interest on the bonds and the first instalment of the real estate taxes on the mort-

gaged property for the year 1951, due and payable on May 1, 1952, were not paid on that date and have not been paid up to the date of the filing of the complaint; that it is claimed there has been a failure to deposit the fee rentals under the ground leases; that Continental has notified plaintiffs that if the defaults continue Continental will be obliged to bring foreclosure proceedings joining the plaintiffs as parties defendant thereto, or, in the alternative, seek to recover the entire mortgage indebtedness from the plaintiffs and each of them, individually; that plaintiffs are not liable for the payment of the principal or interest on the bonds secured by the mortgage indenture or for the performance of any of the other covenants of the mortgage indebtedness; that the assumption of the covenants of the mortgage under the mortgage indenture was made by Brash as trustee and not individually; that plaintiffs believe that in the event of foreclosure proceedings, a sale of the mortgaged property will result in a substantial deficiency.

No issue is joined as to any material fact. By its answer Continental denies that the provisions of the mortgage indenture authorize it to represent the bondholders in plaintiffs' action, and alleges that the bondholders are necessary and essential parties to the proceeding and are not properly represented by Continental as trustee; that the bondholders are the real persons in interest and may have other and separate defenses unkown to the trustee and should be made parties defendant.

June 6, 1952 plaintiffs moved for a summary judgment, supporting their motion by the affidavit of the plaintiff Bohrer stating that on December 5, 1945 he and Barkhausen, doing business as The Doubleby Co., submitted a written offer to purchase the equity of mortgagor in the mortgaged property, and the

395

Oriental Theatre lease hereinbefore mentioned, for $140,305.50, wherein it was stated that upon the consummation of the purchase or shortly thereafter, Barkhausen and Bohrer, the purchasers, will cause the property to be conveyed and transferred to the plaintiff Brash, as trustee, under a trust to be known as the Brash trust, for the benefit of the purchasers, who as beneficiaries thereunder shall pledge their beneficial rights with the Continental, as trustee, as security for the performance of the covenants of the mortgage indenture; that in January 1946 the purchase price was increased to $165,000, the offer was accepted and the transaction consummated by the conveyances mentioned in the complaint.

Affiant further states that on April 15, 1946 an involuntary petition for reorganization was filed against mortgagor by representatives of the bondholders whom Continental represents in the present action, in the United States District Court for the Northern District of Illinois, Eastern Division; that affiant and his coplaintiffs were joined as defendants in the action; that the petitioning bondholders alleged that the transaction with Barkhausen and Bohrer violated the Illinois Statute of Frauds and Bulk Sales Act because Barkhausen and affiant had not personally assumed the covenants and obligations of the mortgage indenture and because the assumption by Brash, as trustee and not individually, added nothing to the bondholders' security; that after extended hearings the special master to whom the matter was referred issued his report in September 1948, finding that neither Barkhausen nor affiant (Bohrer), individually or as copartners doing business as The Doubleby Co., or Brash, individually, either jointly or severally assumed liability, became liable or is liable for the payment of the principal or the interest on the leasehold bonds, or any

of them, secured by the mortgage indenture of May 1, 1935; that this report was approved by the court on March 31, 1949.

June 16, 1952 defendant filed its motion, supported by affidavits, to strike plaintiffs' motion for summary judgment and the supporting affidavit. June 17, 1952 defendant's motion to strike was overruled, but the motion and affidavits in support thereof were permitted to stand as a reply to the affidavit in support of the motion for judgment. On the same day the court found that the defendant, as trustee, fairly and adequately represents the bondholders; that opportunity to intervene and appear in the proceeding had been tendered in open court to counsel for the bondholders' committee and counsel for individual bondholders present, and no such intervention had been made. Defendant's request that the bondholders be made parties was denied. The motion for summary judgment was taken under advisement and briefs ordered to be filed on or before June 23, 1952. On June 25, 1952 two of the bondholders appealing filed their petition stating that they owned bonds in the aggregate principal sum of $151,000; that plaintiffs Barkhausen and Bohrer are personally liable for the payment of the unpaid bonds and all indebtedness secured by the mortgage indenture; that any judgment or determination in the pending suit that plaintiffs were not personally liable would necessarily affect the rights of petitioners and the remaining holders of bonds and interest coupons described in the trust deed; that Continental does not properly represent the interests of petitioners or remaining bondholders; that it is not by the terms of the trust deed obliged to defend this action unless indemnified to its satisfaction; that it has not been so indemnified, and that defendant asserts in its answer that it is not properly the representative of the bond-

holders. These bondholders asked to be made parties defendant and be given leave to file their answer and a counterclaim. Their request was denied. June 27, 1952 the court announced its decision, holding that plaintiffs had not assumed and were not liable for the payment of the bonds secured by the mortgage indenture. Judgment was entered July 1, 1952.

The powers and duties of Continental as trustee are clearly defined. The mortgage indenture provides: All rights of action under the mortgage indenture may be enforced by the trustee; upon the happening of certain "events of default" therein defined, the trustee may, and upon written request of holders of not less than 25 per cent of the principal amount of bonds then outstanding, shall accelerate the principal of the bonds; in the event of default the trustee may, without any action on the part of any bondholder, institute such suit or suits in equity or at law to enforce and protect any of its rights and the rights of the bondholders; no bondholder shall have any right to institute any proceeding for the foreclosure of the mortgage indenture or have any other remedy thereunder unless, after notice and request of the holders of not less than 25 per cent of the principal amount of bonds outstanding to take action or institute suit or proceedings and the offering to the trustee of security and indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein or thereby, the trustee shall have refused or neglected to act on such notice, request or indemnity.

Neither in defendant's answer nor in the petition of the bondholders to be made parties defendant are any facts alleged to warrant the conclusions of the pleaders that Continental did not and could not adequately represent the bondholders. There is no show-

ing of any defense to plaintiffs' suit not urged by Continental. Neither is there any charge that Continental refused or neglected to take any action requested by the bondholders. The provision in the mortgage indenture for security and indemnity to the trustee is solely for the benefit of Continental and has been waived. Without requesting or getting such security or indemnity Continental has defended against plaintiffs' suit and discharged its obligations to the bondholders with fidelity and ability. Immediately upon the institution of suit Continental notified certain officers of a bondholders' committee, including some of the bondholders appealing, of the filing of the suit, sought the cooperation of the bondholders and at all times kept them advised of the proceedings herein. Moreover, some of the bondholders appealing, or their attorneys, were in court at all hearings had herein. As early as June 12th—the first hearing on plaintiffs' motion for summary judgment, and thereafter, the court, with plaintiffs' counsel concurring, stated that any bondholder wishing to intervene would be permitted to do so. No bondholder has intervened. No conflict of interest between Continental and the bondholders is shown. Plaintiffs' suit put in issue their liability for the payment of the mortgage indebtedness. Continental, like the bondholders, takes the position that plaintiffs are liable.

██ ██ The exceptions to the rule that bondholders and other trust beneficiaries are necessary parties, is stated in *White v. Macqueen,* 360 Ill. 236, where the court said (p. 243):

"The general rule is that all persons interested in the subject matter of a suit should be made parties thereto, and that when foreclosure of a mortgage or trust deed is sought, the *cestuis que trustent,* as well as the trustee, should be made parties. To this rule

there are, however, two well established exceptions. The first is where the absent parties are properly represented. In such a case it is sufficient to make such representatives parties to the suit. A trustee under a trust deed represents the interest of the bondholders, and when he is made party to a suit affecting such interest they are as much bound by the decree rendered in the suit as if they were individually made parties thereto, for the reason that their interests receive actual and efficient protection. (*Hale v. Hale,* 146 Ill. 227; Jones on Corporate Bonds and Mortgages, sec. 398.) Another exception to the general rule arises where the beneficiaries are very numerous, so that the delay and expense of bringing them in becomes oppressive and burdensome. In such case they will not be deemed necessary parties where the trustee representing them is made party."

Here the number of bondholders is in excess of one thousand. The case is within both exceptions stated above. The bondholders are not necessary parties and the court did not err in refusing to make them parties defendant.

 The right to enter a summary judgment in a proceeding for a declaratory judgment is questioned. Under the conditions stated in the statute (Section 57, Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, § 181; Jones Ill. Stats. Ann. 104.057]) a summary judgment may be entered "in any action (including a counterclaim) at law or in equity, (a) upon a contract, express or implied . . . ." The purpose of the statute is to facilitate litigation and to expedite trial procedure (*Barkhausen v. Naugher,* 395 Ill. 562, 567)—an end as desirable in a suit for a declaratory judgment as in any other proceeding based on a contract. There is nothing in the statute or rules of

court prohibiting such judgments in declaratory proceedings.

██ In their motion for a summary judgment plaintiffs asserted that "defendant is precluded by the doctrine of estoppel by verdict from now contending that the plaintiffs are personally liable," because in a prior action in the United States District Court for the Northern District of Illinois, Eastern Division, *In the Matter of 32 West Randolph Corporation* (the mortgagor herein), Debtor, the court expressly found, on the same documents and facts herein presented, that plaintiffs were without personal liability; that the action was brought by representatives of the bondholders, whom defendant represents, to enforce a joint and common right, and the present plaintiffs were parties defendant and represented in that action; that the adjudication in that action raised an estoppel against the defendant (Continental) and the bondholders it represents. In the supporting affidavit of plaintiff Bohrer, affiant states that the petitioning bondholders in the bankruptcy court filed an involuntary petition for reorganization against the mortgagor herein; that the special master to whom the matter had been referred, found that Barkhausen and Bohrer were not personally liable for the mortgage indebtedness, and his finding was approved by the court. In an affidavit by one of the attorneys for Continental in opposition to plaintiffs' motion, affiant states that the master amended the findings set out in Bohrer's affidavit and that the finding as amended was approved by the court. The trial court in this cause accepted the finding of the master as set out in the opposition affidavit. Only plaintiffs could object that there was a dispute as to the finding actually made, and they are not complaining.

 *Nothing further as to the proceedings in the bankruptcy court is shown. To operate as an estoppel by verdict it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case, and also material and controlling in the pending case. *Hoffman v. Hoffman,* 330 Ill. 413, 418. From the meager information before us it is impossible to determine whether or not the finding that Barkhausen and Bohrer are not personally liable for the mortgage indebtedness was material or controlling in the bankruptcy proceeding. Furthermore, the only parties concluded by the judgment are adversary parties, and the matter determined must be in issue between them, either by the pleadings or in fact. *Renfro v. Hanon,* 297 Ill. 353; *Jones v. Koepke,* 387 Ill. 97; *Remus v. Schwass,* 406 Ill. 63. The character of a party, as adverse or otherwise as regards the doctrine of *res judicata,* is to be determined not by his position upon the docket, or in the title of the case, but by reference to his relations to the other parties as shown by his interests involved in the case. 30 Am. Jur., Judgments, sec. 234; *Wright v. Schick,* 134 Ohio St. 193, citing with other cases *Baldwin v. Hanecy,* 204 Ill. 281; *Renfro v. Hanon, supra.* The position of plaintiffs in the bankruptcy court as to their liability for the mortgage indebtedness is not shown. It is extremely unlikely that they admitted liability, thereby creating an issue between themselves and the petitioning bondholders and making the finding of the fact conclusive. Estoppel by verdict is not established.

 We now turn to a consideration of the correctness of the judgment entered. As stated by Continental in its brief, "The only question in this case is whether this instrument (the assumption agree-

402

ment) imposes liability for the payment of principal and interest on Randolph Bohrer and L. H. Barkhausen as beneficiaries of the trust or as principals in the transaction . . . ." The answer is in the trust agreement. In addition to the matters alleged in the complaint and hereinbefore mentioned, the trust agreement provides that the beneficiaries thereunder in their own right shall have the management of the trust property and control of the selling, renting and handling thereof, and shall collect and handle the rent, earnings, avails and proceeds thereof; that the trustee shall have no duty in respect to the management or control, or the collection, handling or application of such rents, earnings, avails or proceeds, or in respect to the payment of taxes or assessments, or in respect to insurance, litigation or otherwise, except on the written direction of the beneficiaries as therein provided; that any property remaining in the trust at the end of 20 years shall be sold at public sale by the trustee on reasonable notice and the proceeds divided among those entitled thereto. It contains no provision exonerating the beneficiaries from liability. It is the usual form of land trust in use in this State. It creates an active, not a dry or passive trust. *Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank,* 300 Ill. App. 329. Except for the sale of property remaining in the trust at the end of 20 years and dividing the proceeds, all management and control of the trust property and the earnings, rents, avails and proceeds therefrom is in the beneficiaries in their own right. The trust is not a strict or pure business trust. The beneficiaries are partners. The test of liability is stated in *Schumann-Heink v. Folsom,* 328 Ill. 321, at page 328, as follows:—

"Where under the declaration of trust the unit holders retain control over the trustees and have authority

403

to control the management of the business the partnership relation exists. (Citations.) On the other hand, where the declaration of trust gives the trustees full control in the management of the business of the trust and the certificate holders are not associated in carrying on the business and have no control over the trustees, then there is no liability as partners."

In *In re Estate of Conover*, 295 Ill. App. 443, the court quoted extensively from *Schumann-Heink v. Folsom, supra,* and said:

"We think we need go no further than the above authority to show that the agreement between the parties herein was a partnership. By the terms of said contract they did not exempt themselves nor did they make any mention of exempting themselves from personal liability. When the property was conveyed to the trustee they retained control over the trustee and the management of the business in relation thereto. As we view the situation, it seems to have been nothing more than the association of several parties for the purpose of carrying on a business and, under the law, their liability was a joint and several one."

In *Weissbrodt v. H. W. Elmore & Co.*, 262 Ill. App. 1, under a trust agreement substantially similar to the one before us, the beneficiaries were treated as partners. To the same effect are *Hecht v. Malley*, 265 U. S. 144; *Bank of America Nat. Tr. & Sa. Ass'n v. Scully,* 92 F. (2d) 97; Bogert on Trusts, Vol. 2 (1953) sec. 297; 9 Am. Jur., Business Trusts, sec. 10.

 Where the beneficiaries or certificate holders retain control and manage the trust property, the trustee is their agent when acting in his capacity as trustee under their direction (*Otoe County Nat. Bank v. Delany,* 88 F. (2d) 238, 246) and the beneficiaries are

liable upon his contracts (Scott on Trusts, Vol. 2, § 274).

 The mortgage indenture imposes no personal liability on plaintiffs for payment of principal or interest of the mortgage bonds. They are not parties to the indenture. Their purchase of the mortgaged property, subject to the mortgage, violated no rights of the trustee or the bondholders. The lien created by the mortgage was not impaired. In the absence of restrictions in the mortgage the mortgagor is free to transfer his interest in the property. *Gaskin v. Smith,* 375 Ill. 59, and cases cited. In the mortgage indenture before us, consisting of 85 printed pages, there is but one provision (sec. 6.02(i)) which purports to restrict alienation of the mortgaged property by the mortgagor. In that section the mortgagor agrees that it will not, "except as otherwise by this indenture permitted, consolidate or merge with any other corporation, or in any way sell, assign or transfer the mortgaged property or any part thereof whereby the lien of this indenture or the rights of trustees or bondholders hereunder shall be in any manner impaired." Section 12.04, relied upon by the trustee and the bondholders, is not a restriction on the mortgagor's right of alienation. It is a saving or explanatory clause reciting that nothing in the mortgage indenture (sec. 6.02(i)) shall prohibit any consolidation or merger of the mortgagor with or into another corporation, or any conveyance subject to the mortgage indenture of all or a substantial part of the mortgaged property to any other corporation, if the consolidation, merger or conveyance shall not impair the lien of the indenture or any of the rights and powers of the trustee or the bondholders, and if upon such consolidation, merger or conveyance to a corporation, the payment of principal and interest of the mortgage bonds shall by an in-

405

denture executed and delivered to the trustee, be expressly assumed by the successor corporation formed by or resulting from such merger or consolidation, or to which any such conveyance shall have been made. The conveyance to Brash as trustee for the benefit of Barkhausen and Bohrer was not a conveyance to a corporation within the meaning of this section. Section 12.05, which, together with section 12.04 are the only sections of the mortgage indenture abstracted by appellants, is referred to by them only incidentally in urging the personal liability of plaintiffs. It is in effect a statement of a general rule of law not material to the question before us.

The assumption agreement was signed and delivered by the trustee pursuant to the written authorization, direction, consent and approval of Barkhausen and Bohrer, as beneficiaries. There is nothing in it or in the trust agreement exonerating the beneficiaries from liability for the acts of their agent. Barkhausen and Bohrer, individually and as copartners doing business as The Doubleby Co., are therefore liable under the assumption agreement for the payment of the principal and interest of the mortgage indebtedness. This liability is determined by the trust agreement, the assumption agreement, and the authorization of Barkhausen and Bohrer endorsed thereon. There is no ambiguity in any of these instruments. Any dispute of fact appearing in the pleadings, the motions relating to the summary judgment and supporting affidavits as to the intention, conduct or statements of Barkhausen and Bohrer or their respresentatives prior to or at the time of the delivery of the assumption agreement is immaterial. *Sheets v. Security First Mortgage Co.*, 293 Ill. App. 222.

The judgment is reversed and judgment entered here that plaintiffs Barkhausen and Bohrer, individu-

ally and as copartners doing business as The Double-by Company, are liable for the payment of the principal, interest and all other obligations of all bonds and interest coupons issued and outstanding pursuant to the mortgage indenture.

*Reversed and judgment here.*

FRIEND, P. J. and BURKE, J., concur.

SUPPLEMENTAL OPINION ON REHEARING

NIEMEYER, PRESIDING JUSTICE.

 The Continental, as trustee, and the bond-holders, justly complain that in their petition for rehearing plaintiffs violate the rules of this court and the well established laws of the State by arguing the case and raising and arguing points neither presented nor argued in the original briefs. We did not discuss in our original opinion a point suggested in a single paragraph of seven lines in plaintiffs' original brief but argued extensively in their petition, namely plaintiffs' right to show by parol evidence that it was not the intention of the interested parties, including Continental as trustee, to hold Barkhausen and Bohrer, beneficiaries of the Brash trust, personally liable, because the trustee is not a party to the assumption agreement. As this contention of plaintiffs, if sustained, would require remandment of the cause for further proceedings, including the taking of testimony, instead of entering judgment here as directed in our original opinion, we have disregarded the irregularity of plaintiffs' petition and granted a rehearing primarily for the purpose of giving further consideration to this question.

The promisee is not named in the assumption agreement. Plaintiffs give no record references supporting their assertion that the mortgagor, and not the trustee in the mortgage indenture, is the promisee or

407

second party to the contract. This case does not present the usual situation where the owner of mortgaged property, wishing to protect other assets presently owned or to be acquired, exacts from the grantee of the mortgaged property an assumption of the mortgage obligations generally recited in the deed of conveyance. Here the mortgagor is a corporation, created pursuant to a reorganization plan to take and hold title to the mortgaged property and execute the mortgage indenture involved herein for the benefit of the bondholders under a prior mortgage. Its purpose would be fulfilled with the transfer of the mortgaged property and the disbursement of the purchase price as a liquidating dividend. Its existence would end. Having no assets and no future, it had no need for or interest in an assumption of its mortgage obligations.

There is neither allegation nor proof that the assumption agreement was negotiated by or on behalf of the mortgagor, or that it was delivered to the mortgagor. There is no mention of an assumption of the mortgage obligation in the offer to purchase or in the communications from the voting trustees to the holders of voting trust certificates to secure acceptance of the offer. Plaintiffs say in their reply brief on rehearing, "It (the assumption agreement) was no part of the offer or acceptance." They allege in their complaint that by an instrument dated January 29, 1946 Brash, "not in his individual capacity but in his capacity as Trustee," assumed all of the covenants of 32 West Randolph Corporation in the mortgage indenture, and that the mechanics of the transaction whereby the mortgaged property was transferred to Brash as trustee, who in the manner aforesaid assumed the covenants and conditions of the mortgage indenture, were, as all parties in interest, including Continental as trustee, well knew, "devised to and did constitute a

408

formal compliance with the provisions of the Mortgage Indenture which required the transferee of 32 West Randolph Corporation to assume the covenants and conditions of the Mortgage Indenture." In support of their motion for summary judgment plaintiffs filed the affidavit of Bohrer in which affiant stated that in November or December 1945 he informed Canright and Stofft, officers of Continental, that he and Barkhausen were prepared to purchase the assets of the mortgagor, subject to its liabilities, providing the transaction was arranged so that they could have the benefit of the depreciation of the building for income tax purposes and would not incur or assume any liability for the payment of the principal or interest of the bonds or the performance of any of the covenants and obligations of the mortgage indenture; that the Continental officers suggested the formation of a corporation to assume the mortgage indenture; that he, Bohrer, pointed out that this would not meet their requirements because they would be unable individually to take the benefit of the depreciation deduction; that he, Bohrer, then suggested the use of a land trust, with the trustee assuming the mortgage indenture as trustee only and not individually, thereby avoiding completely any personal liability upon the mortgage indenture on the part of the beneficiaries of the trust and the trustee individually; that the Continental officers told Bohrer that a land trust would comply with the mortgage indenture and that they on behalf of the Continental would approve such procedure.

 The only provision in the 85-page mortgage indenture requiring the assumption of the mortgage obligation, called to our attention, is section 12.05, which required such assumption by *"an indenture supplemental hereto, executed and delivered to the trustee"* (emphasis added) on the consolidation or

409

merger of the mortgagor with or into another corporation, or the conveyance of the mortgaged property to another corporation. As shown by Bohrer's affidavit, he and Barkhausen were attempting to comply with this provision so the Continental would not object to or attempt to thwart the transfer of the mortgaged property to them. Compliance with the section required delivery of the assumption agreement to the trustee. Delivery completed the contract between the obligors, contracting under the name of Brash, etc., and the trustee in the mortgage indenture. This litigation, being between the parties to the contract—Barkhausen and Bohrer contracting through their agent, and the Continental as trustee—parol evidence is not admissible to show that Barkhausen and Bohrer were not to be bound by the assumption agreement. This rule is so universally recognized we thought it unnecessary to cite more than one authority in support of it. *Farmers and Merchants Bank v. Narvid,* 259 Ill. App. 554, cited in plaintiffs' original brief, and *Northern Assur. Co. v. Chicago Mut. Building & Loan Ass'n,* 198 Ill. 474, *Harts v. Emery,* 184 Ill. 560, *Washburn & Moen Mfg. Co. v. Chicago Galvanized Wire Fence Co.,* 109 Ill. 71, and *C. Lane & Co. v. Western Union Teleg. Co.,* 149 Ill. App. 562, cited in the petition for rehearing, recognize the rule in actions between parties to the contract. *Woerter v. Mahler,* 314 Ill. App. 324, cited in the reply brief on rehearing, was a suit on a negotiable note in which this court followed its prior decisions in similar cases where section 20 of the Negotiable Instruments Act was controlling. It has no application to the facts before us. Plaintiffs do not contest the rule in suits between parties to the contract.

There is no ambiguity in the assumption agreement warranting the introduction of parol evidence as to the parties assuming the mortgage obligations. The agree-

410

ment plainly states that Brash, not individually but in his capacity as trustee under the Brash trust agreement in which Barkhausen and Bohrer are the beneficiaries, assumed the mortgage obligations. The agreement creating the Brash trust is unambiguous. Under that agreement, as construed by this court, Brash was the agent of the beneficiaries in assuming the mortgage obligation at their direction. He was acting for disclosed principals.

 Plaintiffs further argue on rehearing, for the first time, that defendant has waived its objection to parol evidence as to the intention of the parties because the objection was not raised in the trial court. This contention is based on a misconception of the rule prohibiting parol evidence. It is a rule of substantive law, not of evidence. 20 Am. Jur., Evidence, sec. 1100; Wigmore on Evidence (3d ed. 1940) secs. 2400 and 2425. Or, as stated by this court in *Air Conditioning Corp. v. Honaker,* 296 Ill. App. 221, 225, "The parol evidence rule is not a rule of evidence but of interpretation or construction." It need not be objected to in the trial court. 20 Am. Jur., Evidence, sec. 1101. Moreover, in answering the allegations of the complaint as to the intention and knowledge of the parties, defendant denied the allegation, and further "denies that said allegations are material and denies that knowledge or intention have any importance or materiality to the legal effect of the instruments referred to and refers to the documents themselves for the legal purport and effect thereof."

 In their petition for rehearing plaintiffs urge for the first time in this court that neither the trustee nor the bondholders can maintain an action on the assumption agreement because it is under seal. The bondholders say that this point was urged in the trial court. Plaintiffs ignore the statement. This contention,

411

if valid, comes too late. As said by the Second Division of this court, speaking through MR. JUSTICE FRIEND in *Chicago City Bank & Trust Co. v. Johnson,* 293 Ill. App. 564, 575: "The law is well settled that the parties cannot for the first time on petition for rehearing raise questions which were not urged or argued on appeal. *Welch v. City of Chicago,* 323 Ill. 498, 508.)" The court will not go beyond the questions presented at the original hearing, even though the order granting the rehearing is general. *Pitek v. McGuire,* 51 N. M. 364.

 In their reply brief on rehearing the plaintiffs urge that in the absence of a seal the assumption agreement is without consideration. They overlook the fact that the agreement recites the receipt of consideration of "Ten Dollars ($10.00) and other good and valuable considerations" (probably including in the latter the acquiescence of the Continental, as trustee, in the transfer to Barkhausen and Bohrer). They also urge that the case should be remanded to permit them to amend their pleadings and pray for reform of the assumption agreement upon the ground of mistake. It may be that in a proper suit relief could be obtained. It is a question which we need not and do not decide. It indicates a departure from the original theory of plaintiffs' case. We are not warranted in remanding the case for this purpose.

 Finally, plaintiffs insist that the court cannot enter judgment for defendant. Plaintiffs put in issue the rights of the parties under the assumption agreement. Defendant answered, asserting the liability of Barkhausen and Bohrer as individuals. The judgment directed in our original opinion is responsive to the issues made. In denying the relief sought by plaintiffs, judgment is properly entered in accordance with the court's construction of the contract. 16 Am. Jur., De-

claratory Judgments, sec. 72; *Strype v. Lewis,* 352 Mo. 1004; *Northland Greyhound Lines v. Amalgamated Ass'n,* 66 F. Supp. 431, 433; *American Auto Ins. Co. v. Indemnity Ins. Co.,* 108 F. Supp. 221, 224. The judgment entered is in accordance with the prior practice of this court. *People ex rel. Cohen v. Barrett,* 349 Ill. App. 236.

The opinion heretofore filed herein is adhered to and readopted as the opinion of the court. The judgment appealed from is reversed and judgment is entered here that Barkhausen and Bohrer, individually and as copartners doing business as The Doubleby Co., are liable for the payment of the principal, interest and all other obligations of all bonds and interest coupons issued and outstanding pursuant to the mortgage indenture.

*Reversed and judgment here.*

BURKE and FRIEND, JJ., concur.